**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**MIDLAND/ODESSA DIVISION**

| | | |
|---|---|---|
| **ALKANE MIDSTREAM LLC,** | § | |
| *Plaintiff*, | § | |
| | § | |
| **v.** | § | **MO:25-CV-00214-DC-RCG** |
| | § | |
| **MESA NATURAL GAS SOLUTIONS,** | § | |
| **LLC,** | § | |
| *Defendant*. | § | |

## REPORT AND RECOMMENDATION OF THE U.S. MAGISTRATE JUDGE

BEFORE THE COURT is Defendant Mesa Natural Gas Solutions, LLC's ("Defendant") Partial Motion to Dismiss. (Doc. 13).[1] This case is before the Court through a Standing Order pursuant to 28 U.S.C. § 636 and Appendix C of the Local Court Rules for the Assignment of Duties to United States Magistrate Judges. After due consideration of the Parties' briefs and the case law, the Court **RECOMMENDS** Defendant's Motion to Dismiss be **GRANTED**. (Doc. 13).

### I.    BACKGROUND

This action was originally brought against both Palmer Johnson Power Systems LLC d/b/a Alterra Systems and Mesa Natural Gas Solutions, LLC. (Doc. 1). On September 23, 2025, however, all claims against Palmer Johnson Power Systems LLC d/b/a Alterra Systems were dismissed without prejudice. (Doc. 22). The case now proceeds against Defendant Mesa Natural Gas Solutions, LLC only. The remaining dispute concerns claims of fraudulent inducement and breach of implied warranty stemming from Plaintiff Alkane Energy's ("Plaintiff") purchase of nineteen generator units manufactured by Defendant. (Doc. 11 at 12–13). Plaintiff converts well-site gas into electricity for remote oilfield operations and requires equipment with a proven record of reliability in harsh field conditions. *Id.* at 5. According to the Complaint, Alterra—

---

1. All page number citations are to CM/ECF generated pagination unless otherwise noted.

Defendant's distributor—first approached Plaintiff in October 2023 to promote Defendant's newly developed generator model. *Id.* Plaintiff informed Alterra and Defendant that it would only purchase units with a history of dependable field performance and wished to avoid being an early tester of unproven technology. *Id.* at 5–6. Although Alterra handled the sales process and executed the purchase documents, Plaintiff alleges that both Alterra and Defendant, through their respective representatives, made the substantive reliability and testing representations that induced the transaction. *Id.* at 5–7.

Plaintiff further alleges Defendant itself made direct representations concerning the generator's development and testing. *Id.* at 6–7. For instance, during the PowerGen 2024 conference, Defendant's engineering director allegedly assured Plaintiff that the units had operated for "thousands of hours" in customer field deployments without issue. *Id.* Plaintiff claims a subsequent YouTube video uploaded by Defendant reinforced these assurances by depicting Defendant's employees describing extensive testing, validation, and real-world field use. *Id.* at 7–9. Plaintiff contends it relied on these representations in deciding to purchase nineteen generators for more than $5.6 million. *Id.* at 9.

Plaintiff alleges that within weeks of the generators being delivered, all nineteen units experienced mechanical or electrical failures, including failed turbochargers, faulty ECM programming, fouled catalysts, valve-seal failures, leaking vaporizers, O2 sensor failures, and metal debris within the intake manifold. *Id.* at 10. According to Plaintiff, these defects were systemic and traceable to Defendant's design modifications, such as changing fuel-control components, altering the intake manifold, and implementing new engine calibration software— changes Plaintiff claims would have been identified through "real-world" field testing. *Id.* at 10–11.

Lastly, Plaintiff asserts Defendant withheld documentation, delayed support, and denied any broader pattern of defects despite Plaintiff's investigation allegedly revealing similar failures among other customers who purchased the same model of generator. *Id.* at 10. In December 2024, however, Defendant acknowledged certain issues with the intake manifold and O2 sensor control logic. But Plaintiff alleges these were only part of the widespread defects affecting the units, and Defendant's internal service data will confirm the defects were systemic and known prior to Plaintiff's purchase. *Id.* at 11. Plaintiff contends discovery will show Defendant had not performed the field testing it represented and Defendant knew, or should have known, of systemic issues before the sale. *Id.* at 11–12. In sum, Plaintiff alleges it would not have proceeded with the purchase absent Defendant's direct and public representations, regardless of the formal contractual structure between Defendant, Alterra, and Plaintiff.

Based on these allegations, Plaintiff brings claims against Defendant for fraudulent inducement and breach of implied warranty. (Doc. 11 at 12–13). On August 11, 2025, Defendant filed the instant Motion to Dismiss arguing Plaintiff fails to state a claim as to its fraudulent inducement claim. (Doc. 13). Plaintiff and Defendant timely filed their respective Response and Reply. (Docs. 16, 17). Consequently, the instant matter is ripe for disposition.

## II.    LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) allows a party to move for the dismissal of a complaint for "failure to state a claim upon which relief can be granted." To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is

3

liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. A claim for relief must contain: (1) "a short and plain statement of the grounds for the court's jurisdiction"; (2) "a short and plain statement of the claim showing that the pleader is entitled to the relief"; and (3) "a demand for the relief sought." FED. R. CIV. P. 8(a). A plaintiff "must provide enough factual allegations to draw the reasonable inference that the elements exist." *Innova Hosp. San Antonio, L.P. v. Blue Cross & Blue Shield of Ga., Inc.*, 995 F. Supp. 2d 587, 602 (N.D. Tex. 2014) (citing *Patrick v. Wal–Mart, Inc.-Store No. 155,* 681 F.3d 614, 617 (5th Cir. 2012)); *Torch Liquidating Trust ex rel. Bridge Assocs. L.L.C. v. Stockstill*, 561 F.3d 377, 384 (5th Cir. 2009) ("[T]he complaint must contain either direct allegations or permit properly drawn inferences to support every material point necessary to sustain recovery") (internal quotation marks and citations omitted).

In considering a motion to dismiss under Rule 12(b)(6), all factual allegations from the complaint should be taken as true, and the facts are to be construed in the light most favorable to the nonmoving party. *Fernandez-Montes v. Allied Pilots Assoc.*, 987 F.2d 278, 284 (5th Cir. 1993). Still, a complaint must contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. "'[N]aked assertions' devoid of 'further factual enhancement,'" and "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are not entitled to the presumption of truth. *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557); *R2 Invs. LDC v. Phillips*, 401 F.3d 638, 642 (5th Cir. 2005) (stating that the Court should neither "strain to find inferences favorable to plaintiffs" nor accept "conclusory allegations, unwarranted deductions, or legal conclusions.").

Federal Rule of Civil Procedure 9(b) governs pleading standards for fraud claims, including state-law fraud claims. *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 338–39 (5th

4

Cir. 2008) ("[S]tate-law fraud claims are subject to the pleading requirements of Rule 9(b).") (citing *Abrams v. Baker Hughes Inc.*, 292 F.3d 424, 430 (5th Cir. 2002); *Williams v. WMX Techs., Inc.*, 112 F.3d 175, 177 (5th Cir. 1997)). Rule 9(b) provides: "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." FED. R. CIV. P. 9(b). "What constitutes 'particularity' will necessarily differ with the facts of each case and hence the Fifth Circuit has never articulated the requirements of Rule 9(b) in great detail." *Guidry v. Bank of LaPlace*, 954 F.2d 278, 288 (5th Cir. 1992). The Fifth Circuit "interprets Rule 9(b) strictly, requiring the plaintiff to specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent." *Flaherty & Crumrine Preferred Income Fund, Inc. v. TXU Corp.,* 565 F.3d 200, 207 (5th Cir. 2009). "At a minimum, Rule 9(b) requires allegations of the particulars of time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby." *Tel–Phonic Servs., Inc. v. TBS Int'l, Inc.*, 975 F.2d 1134, 1139 (5th Cir. 1992).

## III.   DISCUSSION

### A.  Fraudulent Inducement

Defendant moves to dismiss under Rule 12(b)(6) Plaintiff's claim of fraudulent inducement arguing: (1) it was not a party to any purchase agreement Plaintiff entered into to buy the updated generator units from Alterra as required by Texas law; (2) Plaintiff fails to allege a causal connection between Defendant's alleged misrepresentations about the generator units Plaintiff purchased and the alleged harm to Plaintiff; and (3) Defendant's alleged statements are non-actionable opinions or "mere puffery." (Doc. 13). As discussed below, the Court finds that, although Plaintiff plausibly alleges a causal connection and Defendant's alleged statements go

5

beyond mere puffery, the fraudulent inducement claim nevertheless fails because Defendant was not a party to the underlying purchase agreement.

A claim for fraudulent inducement includes all of the elements of common-law fraud, plus elements that are specific to itself. *Zaidi v. Shah*, 502 S.W.3d 434, 441 (Tex. App.—Houston [14th Dist.] 2016, pet. denied). A plaintiff seeking to recover for fraud must prove that (1) the speaker made a material representation; (2) the representation was false; (3) when the representation was made, the speaker either knew it was false or made it recklessly without any knowledge of its truth and as a positive assertion; (4) the speaker intended the plaintiff to act upon the representation; (5) the plaintiff acted in reliance on the representation; and (6) the plaintiff suffered injury thereby. *See Italian Cowboy Partners, Ltd. v. Prudential Ins. Co. of Am.*, 341 S.W.3d 323, 337 (Tex. 2011).

Fraudulent inducement "shares the same elements but involves a promise of future performance made with no intention of performing at the time it was made." *Zorrilla v. Aypco Constr. II, LLC*, 469 S.W.3d 143, 153 (Tex. 2015). To prevail in a fraudulent inducement claim, the plaintiff must not only establish all the elements of a fraud claim, but must establish those elements "as they relate to an agreement between the parties." *Haase v. Glazner*, 62 S.W.3d 795, 798–99 (Tex. 2001). Consistent with this requirement, the Supreme Court of Texas has held "fraudulent inducement arises only in the context of a contract." *See Anderson v. Durant*, 550 S.W.3d 605, 614 (Tex. 2018). Accordingly, "the existence of a contract is an essential part of its proof." *Id.*; *Zaidi*, 502 S.W.3d at 441 (Tex. App.—Houston [14th Dist.] 2016, pet. denied) ("Because a contract between the parties is an element of a fraudulent inducement claim, the absence of a contract renders fraudulent inducement an invalid theory of liability."); *Gulf Liquids New River Project, LLC v. Gulsby Eng'g, Inc.*, 356 S.W.3d 54, 73 (Tex. App.—

6

Houston [1st Dist.] 2011, no pet.) ("Fraudulent inducement . . . requires the existence of a contract as part of its proof.").

Plaintiff's fraudulent inducement claim fails because its Amended Complaint does not allege the existence of any contract between Plaintiff and Defendant. As the Texas Supreme Court has made clear, fraudulent inducement "arises only in the context of a contract," and "the existence of a contract is an essential part of its proof." *Anderson*, 550 S.W. 3d at 614. Here, Plaintiff does not allege it purchased the generator units from Defendant, nor does it allege that it entered into any agreement with Defendant that could serve as the basis for a fraudulent inducement theory. Rather, Plaintiff's allegations focus solely on its purchase of the generators from Alterra. (Doc. 11 at 11–13.).

Plaintiff attempts to avoid this defect by asserting even where a defendant is not a party to the underlying contract, it may nevertheless be liable as a non-party agent. (Doc. 16 at 2–5). It is true that some courts have recognized, in limited circumstances, a non-party corporate agent of the contracting party may be liable for fraudulent inducement. *See River Cap. Advisors of N. Carolina, Inc. v. FCS Advisors, Inc.*, No. 10-CV-471, 2011 WL 831282, at *6 (E.D. Tex. Feb. 7, 2011), *R. & R. adopted*, 2011 WL 831186 (E.D. Tex. Mar. 3, 2011); *Escopeta Oil & Gas Corp. v. Songa Mgmt., Inc.*, No. CIV A 106-CV-386, 2007 WL 171721, at *7 (E.D. Tex. Jan. 17, 2007). However, Plaintiff's Complaint does not allege Defendant was Alterra's agent, corporate representative, or in any similar agency relationship. Rather, Plaintiff alleges only that Defendant manufactured the generators Alterra sold to Plaintiff. Put differently, Plaintiff does not allege Defendant possessed any authority to act on Alterra's behalf in inducing the contract. *See River Cap.*, 2011 WL 831282, at *6.

Alternatively, to the extent Plaintiff contends contractual privity exists between itself and Defendant because Alterra acted as Defendant's agent, that argument likewise fails. Plaintiff alleges only "Alterra describes itself as [Defendant's] partner and distributor to sell [Defendant's] generators." (Doc. 11 at 5). In its Response to Defendant's Motion, Plaintiff asserts this alleged relationship is sufficient to establish Defendant and Alterra "have an agency relationship that gives rise to liability." (Doc. 16 at 5). Such a description, however, does not plausibly allege an agency relationship of the type necessary to impose fraudulent inducement liability on a non-party. *See First v. Rolling Plains Implement Co., Inc.*, 108 F.4th 262, 272 (5th Cir. 2024) (holding allegations merely labeling an individual as a party's "authorized representative" were insufficient to show the individual was authorized to act on the party's behalf). Moreover, Texas courts have long recognized "the general rule is that a retailer or wholesaler is not an agent of a manufacturer such that the retailer can bind the manufacturer contractually." *Coffey v. Fort Wayne Pools, Inc.*, 24 F. Supp. 2d 671, 678 (N.D. Tex. 1998); *see Schott Glas v. Adame*, 178 S.W.3d 307, 314–17(Tex. App.—Houston [14th Dist.] 2005, pet. denied) (concluding no agency relationship existed when sales representative sold products of defendant manufacturer and others, but manufacturer did not control details of sales representative's work); *Sparks v. Chrysler Corp., Airtemp Div.*, 353 S.W.2d 477, 478 (Tex. App.—Beaumont 1961, no writ). Because the Amended Complaint alleges no contractual relationship between Plaintiff and Defendant, and because Plaintiff has not plausibly alleged an agency-based theory of liability, its fraudulent inducement claim is not viable under Texas law. Nevertheless, in the interest of thoroughness, the Court addresses Defendant's remaining arguments as to why Plaintiff's fraudulent inducement claim cannot proceed.

Defendant also argues Plaintiff's fraudulent inducement claim fails because Plaintiff does not establish a causal connection between Defendant's alleged misrepresentations and the supposed actual harm caused to Plaintiff. (Doc. 13 at 5). To establish causation in a fraudulent inducement claim, a plaintiff must show the defendant's misrepresentations were a cause-in-fact of foreseeable losses. *Hartford Fire Ins. Co. v. C. Springs 300, Ltd.*, 287 S.W.3d 771, 781 (Tex. App.—Houston [1st Dist.] 2009, pet. denied). "The test for cause in fact, or 'but for causation,' is whether the act or omission was a substantial factor in causing the injury without which the harm would not have occurred." *Marathon Corp. v. Pitzner*, 106 S.W.3d 724, 727 (Tex. 2003) (citations omitted). A plaintiff must also plead detrimental reliance by showing the defendant's representations induced it to act or refrain from acting to its detriment. *TCA Bldg. Co. v. Entech, Inc.*, 86 S.W.3d 667, 674 (Tex. App.—Austin 2002, no pet.). A court may consider the causation issue by removing the misconduct from the plaintiff's narrative and evaluating the effect on the plaintiff's purported harm. *In re Online Travel Co. (OTC) Hotel Booking Antitrust Litig.*, 997 F. Supp. 2d 526, 547 (N.D. Tex. 2014).

Here, Defendant argues even if its statements regarding the extensive testing of its generators were actionable false representations, Plaintiff "still fails to allege how any of these statements were related to the harms Plaintiff experienced." (Doc. 13 at 5). Defendant further contends Plaintiff fails to connect its alleged losses to any specific misrepresentation by Defendant about pre-launch testing. (Doc. 17 at 5). Viewing the pleadings in the light most favorable to Plaintiff, however, the Court concludes Plaintiff has adequately alleged causation at the pleading stage. *Turner v. Pleasant*, 663 F.3d 770, 775 (5th Cir. 2011) (finding all well-pleaded facts are viewed in the light most favorable to the plaintiff). Plaintiff expressly alleges it would not have purchased the generators absent Defendant's representations regarding extensive

9

pre-launch testing. (Doc. 16 at 5). Plaintiff further alleges the generators' failures "could not have escaped detection by Defendants had any meaningful testing occurred," "[a]ll problems . . . would have been discovered during any meaningful testing," and the issues "should have been revealed during the extensive hours of testing that [Defendant] claims occurred." (Doc. 11 at 2, 11). When the alleged misrepresentations are removed from Plaintiff's narrative, Plaintiff plausibly would not have entered the transaction and, as a result, would not have suffered the alleged losses. *See In re Online Travel*, 997 F. Supp. 2d at 547.

At this stage, Plaintiff need not prove Defendant's failure to conduct meaningful testing caused each alleged defect, but only Defendant's misrepresentations were a substantial factor in inducing Plaintiff to purchase the generators and the resulting losses were a foreseeable consequence of that inducement. *Marathon*, 106 S.W.3d at 727. Whether Defendant actually engaged in pre-launch testing or the alleged defects in fact would have been discovered through such testing presents a factual dispute not suitable for resolution at the motion to dismiss stage. *See Hammer v. Nodolf*, No. 23-CV-0158, 2025 WL 3217766, at *1 (W.D. Tex. Nov. 13, 2025) ("[T]he truth of allegations is generally beyond the realm of a motion to dismiss."); *see also Gaudet v. Howard L. Nations*, APC, No. CV 19-10356, 2021 WL 2338220, at *4 (E.D. La. June 8, 2021) (citing *U.S. ex rel. Willard v. Humana Health Plan of Texas Inc.*, 336 F.3d 375, 385 (5th Cir. 2003)) ("The Fifth Circuit has . . . held that fraud may be pleaded on information and belief when the facts relating to the alleged fraud are peculiarly within the perpetrator's knowledge."). Accordignly, Plaintiff has sufficiently alleged the causation element of fraudulent inducement.

Lastly, Defendant argues Plaintiff's fraudulent inducement claim fails because the alleged misrepresentations constitute nothing more than "mere puffery." (Doc. 13 at 7). To be

10

actionable as fraud, a misrepresentation must concern a material fact. *Transp. Ins. Co. v. Faircloth*, 898 S.W. 2d 269, 276 (Tex. 1995). A pure expression of opinion does not support an action for fraud. *Trenholm v. Ratcliff*, 646 S.W.2d 927, 930 (Tex. 1983). Whether a remark is a "fact" or merely an "opinion" depends on the circumstances. *Ellison v. Daldalyan*, No. 22-CV-02271, 2023 WL 2277127, at *10 (S.D. Tex. Feb. 28, 2023). In examining the circumstances, courts consider "the statement's specificity, the speaker's knowledge, the comparative levels of the speaker's and the hearer's knowledge, and whether the statement relates to the present or the future." *Faircloth*, 898 S.W. 2d at 276.

In this case, Plaintiff alleges prior to the generator purchase, Defendant assured Plaintiff it had "operated the[] Generators in the field for thousands of hours . . . without issue," the generators had "enhanced reliability," and customers would not be "guinea pigs[s]." (Doc. 11 at 6–8). Defendant characterizes these representations as non-actionable sales talk. (Doc. 13 at 7–9). But Plaintiff alleges Defendant had not actually conducted such field testing or deployments, these representations were material to its purchasing decision, and it relied on them to its detriment. *Id.* at 11. Taking Plaintiff's allegations as true, the Court concludes Defendant's statement that it "operated the[] Generators in the field for thousands of hours . . . without issue" amount to more than mere puffery. Examples of representations that can amount to mere puffery or opinion include claims that an investment is "low risk" and will "produce large revenues for a long time," *see Paull v. Capital Res. Mgmt., Inc.*, 987 S.W.2d 214, 218–19 (Tex. App.—Austin 1999, pet. denied), a settlement is "top dollar," *see Faircloth*, 898 S.W. 2d at 276, and a property is "superb," "super fine," and "one of the finest little properties in the City of Austin," *see Prudential v. Jefferson Associates*, 896 S.W.2d 156, 161–62 (Tex. 1995). Likewise, using "broad, and vague, commendatory language comparing [one's] goods favorably with others, or

praising them as good, proper, sufficient, and the like" amounts to mere sales talk or puffery, not a statement of material fact. *GJP, Inc. v. Ghosh*, 251 S.W.3d 854, 889 (Tex. App.—Austin 2008, no pet.).

Here, by contrast, Defendant told Plaintiff that it had "operated the[] Generators in the field for thousands of hours . . . without issue." (Doc. 11 at 7). After Plaintiff purchased the generators with this assumption, they all allegedly suffered from mechanical or electrical failures—issues Plaintiff contends Defendant ultimately acknowledged. (Doc. 11 at 10–11). In this context, Defendant's statement was not mere sales hype; rather, it was in the nature of a factual representation. *See W. Loop Hosp., LLC v. Houston Galleria Lodging Assocs., LLC*, 649 S.W.3d 461, 479 (Tex. App.—Houston [1st Dist.] 2022, pet. denied) (citing *Trenholm*, 646 S.W.2d at 931 ("[T]he Texas Supreme Court has acknowledged that fraudulent inducement claims can be based on 'direct [false] representations of present facts.")). Further, as the maker and manufacturer of the Generators, Defendant purported to have "special knowledge of the facts" and did "have superior knowledge of the facts," which were not "equally available to both parties." *See Paull*, 987 S.W.2d at 219.

Accordingly, the Court finds, at this stage of the litigation, the alleged representation that Defendant "had operated the Generators in the field for thousands of hours . . . without issue" to be more than mere puffery. However, because the Court has concluded Plaintiff failed to allege Defendant was a party to the underlying contract or any other plausible agency theory of liability as discussed above, the Court **RECOMMENDS** Defendant's Partial Motion to Dismiss be **GRANTED**. (Doc. 13).

**B. Plaintiff's Request for Leave to Amend**

In its Response, Plaintiff requests, in the alternative, the Court grant it leave to amend its Complaint for the first time. (Doc. 16 at 8). Federal Rule 15(a) provides that leave to amend pleadings "shall be freely given when justice so requires." FED. R. CIV. P. 15(a). Rule 15(a) "favors granting leave to amend unless a substantial reason exists, such as 'undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed undue prejudice to the opposing party, and futility of amendment.'" *Smith v. McDonough*, No. 22-CV-01383, 2023 WL 5918322, at *9 (W.D. Tex. Sept. 8, 2023) (quoting *Wimm v. Jack Eckerd Corp.*, 3 F.3d 137, 139 (5th Cir. 1993)). Although "leave to amend is by no means automatic," a court should "possess a 'substantial reason' to deny leave to file an amended complaint." *Lawton v. Osado Water Transfer Co.*, No. 15-CV-00189, 2016 WL 11586133, at *1 (W.D. Tex. Sept. 15, 2016) (citations omitted). Here, the Court finds leave to amend proper, as there is no evidence of undue delay or bad faith. Thus, the Court **RECOMMENDS** Plaintiff's request to amend its Complaint be **GRANTED**. (Doc. 16).

## IV.    RECOMMENDATION

In accordance with the above discussion, the Court **RECOMMENDS** Defendant's Partial Motion to Dismiss be **GRANTED**. (Doc. 13). The Court **FURTHER RECOMMENDS** Plaintiff's request to amend its Complaint be **GRANTED**. (Doc. 16). Should the Report and Recommendation be adopted, the Court **RECOMMENDS** Plaintiff be given **<u>14 days</u>** from the date of adoption to file an Amended Complaint.

SIGNED this 19th day of December, 2025.


_____
RONALD C. GRIFFIN
UNITED STATES MAGISTRATE JUDGE

**INSTRUCTIONS FOR SERVICE AND NOTICE OF RIGHT TO APPEAL/OBJECT**

In the event that a party ***has not been served*** by the Clerk with this Report and Recommendation electronically, pursuant to the CM/ECF procedures of this District, the Clerk is **ORDERED** to mail such party a copy of this Report and Recommendation by certified mail. Pursuant to 28 U.S.C. § 636(b)(1), any party who desires to object to this report must serve and file written objections within fourteen (14) days after being served with a copy. A party filing objections must specifically identify those findings, conclusions, or recommendations to which objections are being made; the District Judge need not consider frivolous, conclusive, or general objections. Such party shall file the objections with the Clerk of the Court and serve the objections on all other parties. A party's failure to file such objections to the proposed findings, conclusions, and recommendations contained in this report shall bar the party from a *de novo* determination by the District Judge. Additionally, a party's failure to file written objections to the proposed findings, conclusions, and recommendations contained in this report within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Judge. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996).

16