**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**MIDLAND/ODESSA DIVISION**

| | | |
|---|---|---|
| ALKANE MIDSTREAM LLC, | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | MO:25-CV-00214-DC-RCG |
| | § | |
| MESA NATURAL GAS SOLUTIONS, | § | |
| LLC, | § | |
| *Defendant*. | § | |

## REPORT AND RECOMMENDATION OF THE U.S. MAGISTRATE JUDGE

BEFORE THE COURT is Defendant Mesa Natural Gas Solutions, LLC's Partial Motion to Dismiss. (Doc. 26).[1] This case is before the Court through a Standing Order pursuant to 28 U.S.C. § 636 and Appendix C of the Local Court Rules for the Assignment of Duties to United States Magistrate Judges. After due consideration of the Parties' briefs and the relevant case law, the Court **RECOMMENDS** Defendant Mesa Natural Gas Solutions, LLC's Motion to Dismiss be **GRANTED IN PART** and **DENIED IN PART**. (Doc. 26).

### I.    BACKGROUND

This action was originally brought against both Palmer Johnson Power Systems LLC d/b/a Alterra Systems ("Alterra") and Defendant Mesa Natural Gas Solutions, LLC ("Defendant Mesa"). (Doc. 1). On September 23, 2025 all claims against Alterra were dismissed without prejudice. (Doc. 22). The case now proceeds against Defendant Mesa only. The remaining dispute concerns claims of fraudulent inducement, fraudulent misrepresentation, and breaches of implied and express warranties stemming from Plaintiff Alkane Midstream LLC's ("Plaintiff") purchase of 19 generator units manufactured by Defendant Mesa. (Doc. 25 at 14–20).

---

1. All page number citations are to CM/ECF generated pagination unless otherwise noted.

The factual allegations are as follows. Plaintiff converts well-site gas into electricity for remote oilfield operations and requires generator equipment with a proven record of reliability in harsh field conditions. *Id.* at 5. Defendant Mesa designs and manufactures "power solutions," including the 390kW Natural Gas Generator Set at issue here, which incorporates Defendant Mesa's newly released GV22PU engine. *Id.* at 1, 5. Plaintiff alleges Defendant Mesa's previous units used a Hyundai Doosan Infracore engine with PSI fuel controls, while the GV22PU utilizes a modified engine block that was not previously used in the market nor Defendant Mesa's previously released units. *Id.* at 5. Plaintiff further alleges Defendant Mesa markets its generators with a "95% run-time guarantee" and sells "small batches" of generators through distribution partners such as Alterra, to whom Defendant Mesa allegedly directs customers seeking to purchase fewer than 20 generators. *Id.* at 5–6.

In October 2023, Alterra, acting as Defendant Mesa's sales partner and alleged agent, approached Plaintiff with an aggressive sales pitch for the new generator model. *Id.* at 6, 10. The Second Amended Complaint states that, based on Defendant Mesa's relationship with Alterra, Plaintiff "understood" Alterra to be authorized to discuss technical information about the generators and to act on Defendant Mesa's behalf in selling them. *Id.* at 6. Plaintiff alleges Defendant Mesa controlled key sales terms, including pricing and commissions, and Alterra did not purchase units for resale but instead received a commission from Defendant Mesa upon customer payment. *Id.* at 10, 16.

Plaintiff also alleges Defendant Mesa made direct representations concerning the generator's testing, field testing history, and reliability. *Id.* at 7–10, 14–18. For instance, at the 2024 PowerGen International Convention, Plaintiff's Director of Power Solutions, Sean Stringer ("Stringer"), met with one of Defendant Mesa's representatives, Jason Miwa ("Miwa"), at

2

Defendant Mesa's booth. *Id.* at 7. Stringer expressed concern with the reliability of the generators' new engine and stated Plaintiff did not want to be the first company to try the new product, but Miwa allegedly assured him the generators had operated for "thousands of hours with customers without issue." *Id.* Plaintiff alleges Defendant Mesa directed that any resulting purchase be made through its partner, Alterra, who was also present at Defendant Mesa's booth. *Id.* at 8.

Less than a month later, Plaintiff's representatives watched a YouTube video produced by Defendant Mesa titled "Mesa Solutions Engines," featuring Defendant Mesa's employees discussing the GV22PU engine and Defendant Mesa's new engine line. *Id.* at 8–9. In that video, Defendant Mesa's employees allegedly emphasized spending hours field testing their units and its commitment to customer support and "field validation," and the video assured potential customers that they would not serve as "guinea pig[s]" for unproven equipment. *Id.* at 9. Plaintiff contends these statements reinforced the representations regarding the product's reliability and that Plaintiff would not have proceeded with the $5.58 million purchase of 19 generators but for Defendant Mesa's assurances regarding extensive field testing and reliability. *Id.* at 9–10.

Delivery of the generators occurred in August 2024. *Id.* at 11. Plaintiff alleges that within weeks of their first use, all 19 units suffered from mechanical or electrical failures, including tripped tensioner rods, failed turbochargers, fouled catalysts, faulty ECM programming, failed valve seals, leaking propane vaporizers, O2 sensor failures, oil-flooded combustion chambers, and scored engine components. *Id.* Plaintiff contends the scale and uniformity of these defects demonstrate that these were systemic flaws in design rather than improper use or operation of the generators by Plaintiff. *Id.* at 12–13.

Plaintiff alleges it promptly notified Alterra and Defendant Mesa, but that Defendant Mesa delayed support, redacted or withheld service documentations, and initially denied any broader pattern of failure, suggesting the problems were unique to Plaintiff or due to improper operation of the generators. *Id.* at 11–12. Plaintiff contends its own investigation revealed that at least four other customers who purchased the same product from Defendant Mesa experienced similar issues and comparable failure rates with the same generator model. *Id.* at 12. Plaintiff further alleges Defendant Mesa ultimately acknowledged "possible performance issues" related to the intake manifold and defects in the O2-sensor control logic and offered repairs but no option to return the generators. *Id.* at 13. Plaintiff contends these acknowledgments demonstrate the problems were not isolated to Plaintiff and would have been detected had Defendant Mesa conducted the extensive field testing it represented. *Id.* at 13–14.

In sum, Plaintiff contends Defendant Mesa made specific, material misrepresentations regarding the generators' testing, field performance, and reliability with the intent to induce Plaintiff to purchase the units through Defendant Mesa's strategic partner, Alterra. Further, Plaintiff actually, justifiably, and detrimentally relied on those statements in entering a transaction it otherwise would have declined. *Id.* at 15. Based on these allegations, Plaintiff's Second Amended Complaint asserts causes of action for fraudulent inducement, fraudulent misrepresentation, breach of implied warranty, and breach of express warranty. (Doc. 25 at 14–19). On February 3, 2026, Defendant Mesa filed the instant Motion to Dismiss arguing Plaintiff fails to sufficiently plead its claims for fraudulent inducement and breach of express warranty. (Doc. 26). Plaintiff and Defendant Mesa timely filed their respective Response and Reply. (Docs. 34, 35). Consequently, the instant matter is ripe for disposition.

## II.    LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) allows a party to move for the dismissal of a complaint for "failure to state a claim upon which relief can be granted." To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. A claim for relief must contain: (1) "a short and plain statement of the grounds for the court's jurisdiction"; (2) "a short and plain statement of the claim showing that the pleader is entitled to the relief"; and (3) "a demand for the relief sought." FED. R. CIV. P. 8(a). A plaintiff "must provide enough factual allegations to draw the reasonable inference that the elements exist." *Innova Hosp. San Antonio, L.P. v. Blue Cross & Blue Shield of Ga., Inc.*, 995 F. Supp. 2d 587, 602 (N.D. Tex. 2014) (citing *Patrick v. Wal–Mart, Inc.-Store No. 155*, 681 F.3d 614, 617 (5th Cir. 2012)); *see Torch Liquidating Tr. ex rel. Bridge Assocs. LLC v. Stockstill*, 561 F.3d 377, 384 (5th Cir. 2009) ("[T]he complaint must contain either direct allegations or permit properly drawn inferences to support every material point necessary to sustain recovery") (internal quotation marks and citations omitted).

In a court's review of a motion to dismiss under Rule 12(b)(6), all factual allegations from the complaint should be taken as true, and the facts are to be construed in the light most favorable to the nonmoving party. *Fernandez-Montes v. Allied Pilots Assoc.*, 987 F.2d 278, 284 (5th Cir. 1993). Still, a complaint must contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. "'[N]aked assertions' devoid of 'further factual enhancement,'" and "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are not entitled to the

presumption of truth. *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557); *see R2 Invs. LDC v. Phillips*, 401 F.3d 638, 642 (5th Cir. 2005) (stating that the Court should neither "strain to find inferences favorable to plaintiffs" nor accept "conclusory allegations, unwarranted deductions, or legal conclusions.").

Federal Rule of Civil Procedure 9(b) governs pleading standards for fraud claims, including state-law fraud claims. *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 338–39 (5th Cir. 2008) ("[S]tate-law fraud claims are subject to the pleading requirements of Rule 9(b).") (citing *Abrams v. Baker Hughes Inc.*, 292 F.3d 424, 430 (5th Cir. 2002); *Williams v. WMX Techs., Inc.*, 112 F.3d 175, 177 (5th Cir. 1997)). Rule 9(b) provides: "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." FED. R. CIV. P. 9(b). "What constitutes 'particularity' will necessarily differ with the facts of each case and hence the Fifth Circuit has never articulated the requirements of Rule 9(b) in great detail." *Guidry v. Bank of LaPlace*, 954 F.2d 278, 288 (5th Cir. 1992). The Fifth Circuit "interprets Rule 9(b) strictly, requiring the plaintiff to specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent." *Flaherty & Crumrine Preferred Income Fund, Inc. v. TXU Corp.,* 565 F.3d 200, 207 (5th Cir. 2009). "At a minimum, Rule 9(b) requires allegations of the particulars of time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby." *Tel–Phonic Servs., Inc. v. TBS Int'l, Inc.*, 975 F.2d 1134, 1139 (5th Cir. 1992).

### III.    DISCUSSION

#### A.  Fraudulent Inducement

Defendant Mesa first moves to dismiss Plaintiff's claim for fraudulent inducement, arguing: (1) Plaintiff fails to allege the existence of a contract between Plaintiff and Defendant Mesa; (2) Plaintiff does not allege Defendant Mesa has authority to act on Alterra's behalf to induce Plaintiff to enter a contract with Alterra; (3) Plaintiff's conclusory assertion that Alterra is Defendant Mesa's "authorized agent" is insufficient; and (4) Plaintiff's remaining allegations establish only a partner-distributor relationship between Defendant Mesa and Alterra, not an agency relationship. (Doc. 26 at 2). For the reasons explained below, the Court agrees and finds Plaintiff's fraudulent inducement claim fails because Plaintiff has not plausibly alleged either a contractual relationship between Plaintiff and Defendant Mesa or a legally cognizable basis to impute Plaintiff's contract with Alterra to Defendant Mesa.

As a preliminary matter, a federal court sitting in diversity must apply the law of the forum state—in this case, Texas. *Harken Exploration Co. v. Sphere Drake Ins. P.L.C.*, 261 F.3d 466, 470 n.3 (5th Cir. 2001). As previously recognized in the undersigned's adopted Report and Recommendation (*See* Docs. 23, 24), under Texas law, fraudulent inducement is a species of fraud that "arises only in the context of a contract." *Anderson v. Durant*, 550 S.W.3d 605, 614 (Tex. 2018). To state such a claim, a plaintiff must plausibly allege the existence of "a contract between the parties." *Zaidi v. Shah*, 502 S.W.3d 434, 441 (Tex. App.— Houston [14th Dist.] 2016, pet. denied); *see Haase v. Glazner*, 62 S.W.3d 795, 798–99 (Tex. 2001).

Here, Plaintiff does not allege it entered into any contract with Defendant Mesa. Instead, the Second Amended Complaint alleges Plaintiff purchased the generators from Alterra, which Plaintiff describes as Defendant Mesa's "partner," "distributor," or "authorized agent."

7

(Doc. 25 at 10, 16–18). In an attempt to circumvent the absence of contractual privity with Defendant Mesa, Plaintiff asserts "a third-party or agent may be liable for fraudulent inducement even where it is not a party to the underlying contract" and that "Mesa can be liable if it shares an agency relationship with a contracting party" (Doc. 34 at 4) (citing *Escopeta Oil & Gas Corp. v. Songa Mgmt., Inc.*, No. CIV A 106-CV-386, 2007 WL 171721 (E.D. Tex. Jan. 17, 2007); *River Cap. Advisors of N. Carolina, Inc. v. FCS Advisors, Inc.*, No. 10-CV-471, 2011 WL 831282, at *6 (E.D. Tex. Feb. 7, 2011)). Under this theory, because Defendant Mesa is the alleged non-party tortfeasor, Defendant Mesa would have to be acting as the corporate agent of the actual contracting party—Alterra—for this exception to apply. The Second Amended Complaint pleads no facts establishing such an agency relationship in connection with the alleged inducement. *See River Cap. Advisors*, 2011 WL 831282, at *6, *R. & R. adopted*, 2011 WL 831186 (E.D. Tex. Mar. 3, 2011) (acknowledging that a third-party agent may be liable for fraudulent inducement, but only "*where the non-party is a corporate agent of the contracting party* or shares similar type agency relationship[]") (emphasis added).

Plaintiff also cites *Indep. Receivables Corp. v. Precision Recovery Analytics, Inc.* and *In re Arthur Andersen LLP*, in support of this proposition. (Doc. 34 at 5) (citing No. 11-CV-008, 2012 WL 12874526 (W.D. Tex. May 16, 2012); 121 S.W.3d 471, 481 (Tex. App.—Houston [14th Dist.] 2003, no pet.)). The authorities Plaintiff relies on are not factually analogous. First, in *Escopeta Oil*, the contracts alleged to have been fraudulently induced were between the plaintiff and the defendant, not between the plaintiff and a third party. *Escopeta Oil*, 2007 WL 171721, at *7–12 (E.D. Tex. Jan. 16, 2007). And although *Indep. Receivables Corp.* and *In re Arthur Andersen* may stand for the broader proposition that a party may be liable for fraud even if it does not make representations directly to the plaintiff, those cases address fraud and

8

fraudulent misrepresentation—not fraudulent inducement of a contract between the plaintiff and a separate contracting party, as alleged here.

Plaintiff also attempts to recast Alterra as Defendant Mesa's agent, alleging Defendant Mesa exercised substantial control over the sales process and over Alterra's dealings with Plaintiff, thereby seeking to treat Alterra's conduct as Defendant Mesa's own and to impose fraudulent inducement liability on Defendant Mesa. (*See, e.g.*, Doc. 25 at 16). Specifically, Plaintiff alleges Defendant Mesa directed sales through Alterra; set the sales price for its generators; participated in marketing and trade show activities; communicated directly with Plaintiff regarding the generators; approved product modifications; received proceeds from the sale; and participated in post-sale warranty and service efforts. *Id.* at 6, 10–11, 16, 20. Plaintiff further characterizes Alterra as Defendant Mesa's agent and asserts "on information and belief" that Alterra functioned as a "pass-through" entity in Defendant Mesa's sales structure. (Doc. 34 at 4).

Even accepting these allegations as true, they are insufficient to plausibly establish an agency relationship. *See Coffey v. Fort Wayne Pools, Inc.*, 24 F. Supp. 2d 671, 678 (N.D. Tex. 1998); *Broussard v. San Juan Products, Inc.*, 273 S.W.3d 400, 403 (Tex. App.—Beaumont 2008, no pet.). Courts have consistently rejected agency theories in the manufacturer-dealer context where the plaintiff alleges facts such as control over pricing and marketing materials, use of distributors as sales channels, payment of commissions, and involvement in warranty or post-sale services. *See Schott Glas v. Adame*, 178 S.W.3d 307, 315–17 (Tex. App.—Houston [14th Dist.] 2005, pet. denied) (concluding that, even where a sales representative promoted the manufacturer's products using its samples and promotional materials, regularly communicated with its marketing manager, provided customer service, and received

commissions, the evidence was legally and factually insufficient to support a finding of an agency relationship); *Coffey*, 24 F. Supp. 2d at 678–80 (holding that designating an "exclusive dealer," limiting that dealer's offerings to the manufacturer's products, and supplying that dealer with promotional materials and sales leads was insufficient to establish an agency relationship).

The same is true here. Plaintiff alleges Defendant Mesa "controll[ed] key terms (pricing, commissions, approvals, etc.)," directed "all sales through Alterra," co-staffed tradeshow booths, set sales prices for its generators, paid Alterra a commission, and communicated with both Alterra and Plaintiff. (Doc. 25 at 10, 16). These allegations reflect a manufacturer-dealer relationship—not the type of control over the "means and details" of Alterra's operations required to establish agency under Texas law. *See Adame*, 178 S.W.3d at 316; *Coffey*, 24 F. Supp. 2d at 677. Plaintiff further relies on allegations made "on information and belief" that discovery will reveal additional control establishing Alterra as Defendant Mesa's agent. (*See, e.g.*, Doc. 25 at 10). Such speculation, however, cannot establish the plausibility required to withstand a Rule 12(b)(6) challenge, which tests the sufficiency of the pleadings at the time they are filed. *See Irons v. City of Dallas*, No. 11-CV-1894, 2012 WL 1986585, at *4 (N.D. Tex. Apr. 4, 2012), *R. & R. adopted*, 2012 WL 1992113 (N.D. Tex. June 4, 2012) ("Plaintiffs' allegations based 'upon information and belief' are not sufficient because Plaintiffs are required to allege facts, not suppositions.").

Plaintiff's theory fails for an additional, more fundamental reason tied to the contract requirement itself. The Second Amended Complaint pleads no facts—beyond Plaintiff's own subjective understanding—showing that Alterra entered into the sales agreement in a representative capacity on Defendant Mesa's behalf or purported to bind Defendant Mesa as a principal. Allegations that a party *believed* it was dealing with an agent do not suffice to impose

contractual liability on the alleged principal. *See Paragon Indus. Applications, Inc. v. Stan Excavating, LLC*, 432 S.W.3d 542, 551 (Tex. App.—Texarkana 2014, no pet.) ("[E]ven though one of the parties may be operating under a good-faith belief that the person with whom they are dealing is the agent of another, that fact alone is not enough to bind the purported principal."); *see also Fan Expo, LLC v. Nat'l Football League*, No. 16-CV-763, 2018 WL 1890144, at \*6 (Tex. App.—Dallas Apr. 20, 2018, pet. denied) ("[I]n order to establish a party signed as an agent, the plaintiff must prove that the party indicated that he was signing in a representative capacity and identified his principal."). Instead, the Second Amended Complaint describes a transaction in which Plaintiff contracted with—and purchased the generators from—Alterra, alleging only that Defendant Mesa would benefit from that sale. (Doc. 25 at 15, 20). But a nonparty's receipt of a benefit from a contract does not render it liable on that contract. *See Focus Direct, Inc. v. Sekulow*, No. 02-CA-1175, 2003 WL 22143281, at \*1 (W.D. Tex. Sept. 5, 2003). Thus, the pleaded facts reflect that Alterra contracted in its own capacity, not as a representative of Defendant Mesa, and they do not establish Defendant Mesa was a party to or bound to the agreement. Accordingly, Plaintiff's allegations are insufficient to state a claim for fraudulent inducement against Defendant Mesa.

Plaintiff argues dismissal of its fraudulent inducement claim "would permit Mesa to participate in the sales process, directly make fraudulent statements to the potential buyer, and completely escape liability." (Doc. 34 at 6–7). That concern does not alter the Court's analysis. As discussed above, fraudulent inducement is a contract-based claim that requires a legally cognizable connection to the underlying agreement, which Plaintiff has not plausibly alleged. *See Zaidi*, 502 S.W.3d at 441 (explaining that fraud and fraudulent inducement are distinct causes of action, and that proof of fraud is not, by itself, sufficient to establish fraudulent inducement).

Here, Plaintiff does not plausibly allege Defendant Mesa was a party to the contract at issue or that Defendant Mesa and Alterra stood in a principal-agent relationship with respect to that contract—whether by Defendant Mesa acting through Alterra as its corporate agent, or by Alterra acting through Defendant Mesa as its agent with authority to bind Defendant Mesa to the agreement. Thus, to the extent Plaintiff contends Defendant Mesa made actionable misrepresentations independent of any contractual relationship, Plaintiff has asserted other fraud-based causes of action that do not require contractual privity (*See, e.g.*, Doc. 25 at 16), and those claims are not challenged by Defendant Mesa in the present Motion.  In sum, since there is no agreement between Plaintiff and Defendant Mesa, Plaintiff's fraudulent inducement claim is not plausible and should be dismissed. *See Beran v. World Telemetry, Inc.*, 747 F. Supp. 2d 719, 727 (S.D. Tex. 2010).

Accordingly, the Court **RECOMMENDS** that Defendant Mesa's Motion to Dismiss be **GRANTED** as to Plaintiff's fraudulent inducement claim (Doc. 26 at 14), and the claim be **DISMISSED WITHOUT PREJUDICE**.

### B. Breach of Express Warranty

Plaintiff also asserts a claim for breach of express warranty based on alleged statements that the generators had undergone "hundreds of hours of real-world testing" and an asserted "95% run-time guarantee." (Doc. 25 at 19).

To establish a breach of express warranty, a buyer must show "(1) an affirmation or promise made by the seller to the buyer; (2) that such affirmation or promise was part of the basis for the bargain, e.g., that the buyer relied on such affirmation or promise in making the purchase; (3) that the goods failed to comply with the affirmation or promise; (4) that there was financial injury; and (5) that the failure to comply was the proximate cause of the financial injury

to the buyer." *Spencer v. BMW of N. Am., LLC*, No. 14-CV-00869, 2015 WL 11661765, at *9 (W.D. Tex. Dec. 22, 2015) (citing *Lindemann v. Eli Lilly & Co.*, 816 F.2d 199, 202 (5th Cir. 1987)).

At the outset, Defendant Mesa contends Plaintiff cannot maintain an express warranty claim absent privity because the generators were purchased through a third-party distributor, Alterra. (Doc. 26 at 12–13). Some Texas courts have indicated contractual privity is required for breach of express warranty actions arising from a sales contract. *See, e.g.*, *Lujan v. Tampo Mfg. Co.*, 825 S.W.2d 505, 511 (Tex. App.—El Paso 1992, no writ) ("Without privity, [the plaintiff] could have no cause of action for . . . breach of an express warranty."); *Tex. Processed Plastics, Inc. v. Gray Enterprises, Inc.*, 592 S.W.2d 412, 417 (Tex. App.—Tyler 1979, no writ) (holding that a buyer who "was not in privity" with the seller could not recover against that seller for breach of express warranty). However, courts have also recognized that express warranty liability may extend to manufacturers who make actionable affirmations of fact directly to end users, even in the absence of formal contractual privity. *See Cerber Prop. sp. z.o.o. S.K.A. v. Texas Instruments Inc.*, No. 18-CV-0992, 2019 WL 1432925, at *3 (N.D. Tex. Mar. 28, 2019) ("[T]here appears to be no bright-line rule regarding privity in breach of express warranty cases."); *PPG Indus., Inc. v. JMB/Hous. Ctrs. Partners Ltd.*, 146 S.W.3d 79, 90 (Tex. 2004) ("[I]f manufacturers make representations or warranties directly to consumers, the latter may sue directly (despite the absence of privity) for breach of express warranty . . . ."). At the pleading stage, Plaintiff's allegations that Defendant Mesa's representatives made direct representations to Plaintiff regarding the generators' performance and reliability are sufficient to survive dismissal on privity grounds. *See Cerber*, 2019 WL 1432925, at *3 (finding that resolution of the privity issue is "better suited for the summary judgment stage").

13

Turning to the alleged warranty statements, Plaintiff first relies on Defendant Mesa's representation that the generators had undergone "hundreds of hours of real-world testing" and had been operated in the field "without issue." (Doc. 25 at 17, 19). Although the Court previously found Defendant Mesa's statement that it "operated the[] Generators in the field for thousands of hours . . . without issue" was sufficiently factual to support fraud-based causes of action (Doc. 23 at 12), the breach of express warranty inquiry is distinct. Fraud focuses on whether a statement is materially false or misleading, whereas a breach of express warranty claim turns on whether the goods *failed to comply* with the specific affirmation or promise about the product's characteristics. *Spencer*, 2015 WL 11661765, at *9.

On the current pleadings, Plaintiff neither explains nor suggests how the generators' alleged defects caused them to *fail to conform* to Defendant Mesa's statement that it conducted "hundreds of hours of real-world testing." *Id.*; (Doc. 25 at 19). In other words, a representation that a product was tested does not describe a product characteristic or performance standard to which the goods can conform or fail to conform, as required to state a claim for breach of express warranty. *See Charles v. K-Pats., Inc.*, No. 17-CV-339, 2018 WL 9869532, at *8 (E.D. Tex. Aug. 10, 2018). Without an identifiable standard of conformity applicable to the goods themselves, Plaintiff has not plausibly alleged a breach of express warranty on this basis. *See Elanco Products Co. v. Akin-Tunnell*, 474 S.W.2d 794 (Tex. Civ. App.—Amarillo 1971) ("If plaintiff is to recover on an express warranty, it must be grounded upon the failure of the product to comply with the warranty . . . .").

Plaintiff also relies on an alleged "95% run-time guarantee" referenced in a prior publication made by Defendant Mesa. (Doc. 25 at 19). Unlike the generalized testing statements, this representation constitutes a concrete performance assurance that can function as an express

14

warranty under Texas law. *See Med. City Dallas, Ltd. v. Carlisle Corp.*, 251 S.W.3d 55, 60 (Tex. 2008) ("Any affirmation of fact or promise made by the seller to the buyer which relates to the goods . . . creates an express warranty that the goods shall conform to the affirmation or promise."). Defendant Mesa contends the statement predates the development of the specific generator model purchased by Plaintiff and therefore cannot apply to the goods at issue. (Doc. 26 at 17). But Plaintiff has plausibly alleged otherwise. Plaintiff represents that the challenged statement remained publicly available on Defendant Mesa's website at the time of the sale and remains there today; that the guarantee is not limited by product line, model, or date but instead applies broadly to Defendant Mesa's natural gas generators; and that the generators at issue are natural gas generators to which the guarantee's plain language applies. (Docs. 25 at 19–21; 34 at 8–9).

At the pleading stage, the Court must accept these allegations as true and draw all reasonable inferences in Plaintiff's favor. *Aeritas, LLC v. Off. Depot, LLC*, No. 22-CV-00986, 2024 WL 1336487, at *2 (W.D. Tex. Mar. 28, 2024), *R. & R. adopted*, 2024 WL 1624734 (W.D. Tex. Apr. 15, 2024). Taking Plaintiff's allegations as true, a reasonable buyer could understand a publicly available, unqualified "95% run-time guarantee" for natural gas generators to apply to the natural gas generators Defendant Mesa was selling at the time of purchase. (Doc. 25 at 19). Whether Defendant Mesa subjectively intended the guarantee to apply only to older models, or whether Plaintiff actually relied on the statement, are questions of fact inappropriate for resolution at this stage. Plaintiff further alleges the generators experienced widespread mechanical and electrical failures shortly after delivery. (Doc. 25 at 11–12). When viewed in conjunction with the alleged "95% run-time guarantee," those allegations are sufficient at this stage to state a plausible claim for breach of express warranty under Rule

12(b)(6). *See W. Plains, LLC v. Pneumat Sys., Inc.*, No. 20-CV-0572, 2020 WL 11564114, at *3 (S.D. Tex. Dec.18, 2020) (finding allegations of specific performance promises, nonperformance, and resulting loss sufficient to state a plausible express-warranty claim at the pleading stage).

Accordingly, the Court **RECOMMENDS** that Defendant Mesa's Motion to Dismiss be **GRANTED** as to Plaintiff's breach of express warranty claim premised on Defendant Mesa's representation that the units had undergone "hundreds of hours of real-world testing" (Doc. 26 at 15), and **DENIED** as to Plaintiff's breach of express warranty claim premised on Defendant Mesa's guarantee of a "95% run-time." (Doc. 26 at 14). The Court further **RECOMMENDS** that Plaintiff's breach of express warranty claim based on the "hundreds of hours of real-world testing" representation be **DISMISSED WITHOUT PREJUDICE.**

## IV.   RECOMMENDATION

In accordance with the above discussion, the Court **RECOMMENDS** Defendant's Partial Motion to Dismiss be **GRANTED IN PART** and **DENIED IN PART**. (Doc. 26).

Defendant's Motion should be **GRANTED** as to Plaintiff's claims for fraudulent inducement and breach of express warranty based on Defendant's representation that the units had undergone "hundreds of hours of real-world testing," and **DENIED** as to Plaintiff's claim for breach of express warranty based on Defendant's guarantee of a "95% run-time" guarantee. The Court further **RECOMMENDS** that Plaintiff's fraudulent inducement claim and breach of express warranty claim based on the "hundreds of hours of real-world testing" representation be **DISMISSED WITHOUT PREJUDICE**.

16

SIGNED this 15th day of May, 2026.

_____
RONALD C. GRIFFIN
UNITED STATES MAGISTRATE JUDGE

**INSTRUCTIONS FOR SERVICE AND NOTICE OF RIGHT TO APPEAL/OBJECT**

In the event that a party ***has not been served*** by the Clerk with this Report and Recommendation electronically, pursuant to the CM/ECF procedures of this District, the Clerk is **ORDERED** to mail such party a copy of this Report and Recommendation by certified mail. Pursuant to 28 U.S.C. § 636(b)(1), any party who desires to object to this report must serve and file written objections within fourteen (14) days after being served with a copy. A party filing objections must specifically identify those findings, conclusions, or recommendations to which objections are being made; the District Judge need not consider frivolous, conclusive, or general objections. Such party shall file the objections with the Clerk of the Court and serve the objections on all other parties. A party's failure to file such objections to the proposed findings, conclusions, and recommendations contained in this report shall bar the party from a *de novo* determination by the District Judge. Additionally, a party's failure to file written objections to the proposed findings, conclusions, and recommendations contained in this report within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Judge. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996).

18